UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MOHAMUD ABDOW ADAN,**

**Plaintiff,**

**v.**

**SUSAN M. BURNS, *et al.*,**

**Defendants.**

**Civil Action No. 26-864 (JEB)**

**MEMORANDUM OPINION**

Plaintiff Mohamud Abdow Adan is a Kenyan citizen residing in Nairobi who seeks an immigrant visa so that he may join his U.S.-citizen wife, Hibo Abdirahman Mohamed, in the United States as a lawful permanent resident. To that end, Mohamed filed an I-130 visa petition on Adan's behalf in November 2020, but after petition approval, his visa application has languished in administrative-processing limbo for over two years. Plaintiff seeks relief under the Administrative Procedure Act and the Mandamus Act to compel Defendants to finish processing his application. Defendants have now moved to dismiss, which Motion the Court will grant.

## I. Background

### A. Legal Background

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, permits a citizen of the United States to assist her spouse in attaining a visa and, ultimately, status as a lawful permanent resident. See id., §§ 1151(a), (b)(2)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2(a). "The first step [in helping] an eligible relative apply to immigrate" is for the U.S. citizen to fill out Form I-130 on a relative's behalf. I-130, Petition for Alien Relative, U.S. Citizenship & Immigr. Servs., https://perma.cc/5JY9-U6WR; see 8 C.F.R. § 204.1(a)(1). If the petition is approved, the foreign

national must then go to his local U.S. consulate to complete visa processing, which includes submitting an online Immigrant Visa and Alien Registration Application and appearing for an interview with a consular officer. See 22 C.F.R. § 42.67(a)(3). After the interview, this officer must either issue the visa or refuse it. See id. § 42.81(a).

Section 221(g) of the Immigration and Nationality Act prohibits consular officers from issuing a visa if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that [an] alien is ineligible to receive" one. See 8 U.S.C. § 1201(g). The process, however, does not necessarily end when an application is first refused. See id. That is because while the initial application and interview might not convince the consular officer that the applicant is eligible for a visa, further evidence might. If the consular officer believes that is the case, then she can put the visa into so-called administrative processing — during which the officer seeks out and reviews more evidence. See Administrative Processing Information, U.S. Dep't of State, https://perma.cc/NK8K-9U8H. The applicant, meanwhile, must sit tight.

Neither Congress nor any regulations say how long administrative processing may take. Still, because the State Department is subject to the APA, its officers cannot drag their feet forever; they must "conclude a matter presented to" them "within a reasonable time." 5 U.S.C. § 555(b). This case alleges that Adan's administrative processing has lingered for so long that it violates that duty.

B. Factual Background

Adan, the Kenyan citizen, married U.S. citizen Mohamed in 2018. See ECF No. 1 (Compl.), ¶¶ 2, 8, 11. Two years later, she filed an I-130 petition for him so that he could seek lawful-permanent-resident status. Id., ¶ 19. Adan readily checked the first boxes: the petition

was approved, and he completed his visa interview on April 9, 2024, at the U.S. Embassy in Kenya. Id., ¶¶ 20, 22. Following the interview, however, Plaintiff learned that his visa application had been denied and placed in administrative processing, where it has sat since. Id., ¶ 23. And although he and his wife have inquired multiple times about the status of that application, they have not received any substantive updates. Id., ¶ 26.

Adan thus filed a lawsuit asking this Court to order Defendants to "process [his] visa application as soon as reasonably possible." Id., ¶ 42. He seeks an injunction under § 706(1) of the APA, which creates a cause of action to "compel agency action unlawfully withheld or unreasonably delayed," as well as a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361. See Compl., ¶¶ 27–39. Defendants have moved to dismiss. See ECF No. 5 (MTD).

## II. Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Id. at 1. When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 173 (D.D.C. 2020)). The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555,

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A plaintiff may survive a Rule 12(b)(6) motion even if "`recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III. Analysis

The Court first considers whether it may hear Adan's suit. Finding that the answer is yes, it then assesses the merits — starting with his claim under the APA, then turning to his petition for a writ of mandamus.

### A. Consular Nonreviewability

Defendants argue that the Court should not even reach Adan's causes of action because they are barred by the doctrine of consular nonreviewability. See MTD at 9–12. They advance the same arguments that the Government put forth in Dib v. Shea, 2026 WL 1578859, at *3 (D.D.C. June 2, 2026) — specifically, that per the D.C. Circuit's unpublished opinion in Karimova v. Abate, 2024 WL 3517852 (D.C. Cir. July 24, 2024), a decision to place a visa into administrative processing is a final decision to which consular nonreviewability applies. See MTD at 11. For the same reasons that this Court rejected those arguments in Dib mere months ago, they fail here, too. See 2026 WL 1578859, at *3. The Court may therefore proceed to the merits.

### B. APA Claim

Adan's claim under § 706(1) of the APA seeks to "compel agency action" — here, finishing administrative processing — that has been "unreasonably delayed." "To state a claim

for unreasonable delay, [p]laintiffs must" plausibly allege two elements: (1) "that the agency failed to take a discrete agency action that it is required to take," and (2) "that the delay was unreasonable." Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (quotation marks omitted). Adan's claim clearly centers around a discrete agency action: "[g]ranting or refusing a visa to an applicant." Khazaei v. Blinken, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023). As in Dib, however, this Court declines to weigh in on the question of whether this was also an action that Defendants are required to take. Even if it is, the delay is not unreasonable.

Courts examine the reasonableness of a particular delay using the six factors from Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up).

Plaintiff first argues that "the use of TRAC at this stage of litigation is inappropriate given the incompleteness of the record." Opp. at 25. The D.C. Circuit, however, has applied the TRAC factors at the motion-to-dismiss stage and affirmed district courts that did the same. Da Costa, 80 F.4th at 338, 340. Circuit law thus sanctions the Court's current assessment of whether Plaintiff has plausibly alleged that the factors tip in his favor.

1. *Factors (1) and (2)*

Start with whether Defendants' timeline has been governed by a rule of reason and whether Congress has provided any guidance. Given that such questions are closely related, courts "typically consider the first and second factors together." Nusrat v. Blinken, 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022).

These ask how long the agency has delayed and why. Afghan & Iraqi Allies v. Blinken, 103 F.4th 807, 816 (D.C. Cir. 2024). As such, at least in theory, the length of the delay is not dispositive: considerations including the "complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," Mashpee Wampanoag Tribal Council, 336 F.3d 1094, 1102 (D.C. Cir. 2003), go to the reasons for the delay. But Adan puts forth little argument on these fronts, citing only the Government's own lack of explanation for the length of its review process. See Opp. at 27. As such, his claim must stand or fall primarily on the length of the delay, and the Court thus looks at whether that length of time is reasonable.

It first asks whether the delay has run past any congressionally prescribed timeline. It has not because Congress has declined to set a firm deadline to process immigrant visas. Adan argues otherwise, pointing to a statute that declares, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). But "a sense of Congress resolution is not law." Emergency Coal. to Defend Educ. Travel v. Dep't of Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008). "The Court is thus persuaded that the language in § 1571(b) is merely hortatory." Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 14 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). Plaintiff then points to 5 U.S.C. § 555(b). See Opp. at 29. This

statute, however, simply states that final adjudications on visa applications must occur "within a reasonable time," 5 U.S.C. § 555(b), rather than presenting a specific number of months or years.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" for how much time is reasonable. Sarlak v. Pompeo, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Delays of comparable length to Adan's, and even much longer, have consistently been found reasonable. See Isse v. Whitman, 2023 WL 4174357 (D.D.C. June 26, 2023) (40-month delay reasonable); Akrayi v. U.S. Dep't of State, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (delay of "almost three years . . . falls comfortably within the range of reasonableness"); Didban, 435 F. Supp. 3d at 176–77 (D.D.C. 2020) (with delay of two years, first two factors "strongly favor the Government"); Sarlak, 2020 WL 3082018, at *5 (same); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (two-year delay "does not typically require judicial intervention"); Mahmood v. U.S. Dep't of Homeland Sec., 2021 WL 5998385, at *7–8 (D.D.C. Dec. 20, 2021) (same); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (25 months "not unreasonable"); Janay v. Blinken, 743 F. Supp. 3d 96, 115 (D.D.C. 2024) (26-month delay "well within" reasonable timeline) (quotation marks omitted); Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (29-month delay reasonable).

Plaintiff's application was put into administrative processing after his interview at the U.S. Embassy in Kenya on April 9, 2024. See Compl., ¶¶ 22–23. Courts in this district divide over whether agency delays should be measured up to the date when the plaintiff sued or up to the date when the court issues its opinion. Compare, e.g., Barazandeh v. U.S. Dep't of State, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint."), with, e.g., Brzezinski v. U.S. Dep't of Homeland Sec., 2021 WL

4191958, at *4 n.3 (D.D.C. Sept. 15, 2021) ("[C]ases seem to focus on the delay up to the issuance of the opinion."). Even measuring time up until today, Plaintiff has been marooned in administrative processing for roughly 28 months — well within the time that courts hold is reasonable as a matter of law.

The Court is mindful of how hard it is for a plaintiff to allege facts beyond the length of the delay before he has gotten discovery. Plaintiffs can and have nevertheless prevailed by showing delays so long that the first two factors tip their way. Asadi v. U.S. Dep't of State, 2024 WL 3835409, at *7 (D.D.C. Aug. 15, 2024) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable.") (quotation marks and citation omitted). But the delay in processing Adan's application is far too short to meet that threshold. The first two factors thus favor Defendants.

2. *Factors (3) and (5)*

Factors (3) and (5) — whether human health and welfare are at stake and the interests prejudiced by delay — overlap, so courts typically consider them together. Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); Sivananthan v. Blinken, 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023). Here, Adan alleges that the delay in adjudicating his I-130 petition "has inflicted severe and compounding hardships on him, his wife Hibo, and their three young children." Compl., ¶ 8. Plaintiff resides in Kenya, while his wife and kids lie across oceans in the United States, where he cannot go until he gets a visa. Id. His wife has thus been forced to endure immense "physical, emotional, and financial" strain from "the daily demands of single parenthood," and his children have endured a severe "psychological toll" from the absence of their father. Id. Indeed, a prolonged separation from "immediate family member[s]" is itself a

deep injury. Isse, 2023 WL 4174357, at *7; see also Didban, 435 F. Supp. 3d at 177. Factors (3) and (5) therefore favor relief.

3. *Factor (4)*

On the other hand, the fourth factor — "the effect of expediting delayed action on" other agency priorities, TRAC, 750 F.2d at 80 — is a major obstacle for Plaintiff. If a line of applicants is waiting for a decision and "putting [a plaintiff] at the head of the queue simply moves all others back one space and produces no net gain," then that fact by itself usually precludes relief — even when all the other factors favor the plaintiff. In re Barr Lab'ys, Inc., 930 F.2d 72, 75–76 (D.C. Cir. 1991); Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (characterizing Barr Laboratories as so holding); see also Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 192 (D.C. Cir. 2016) (that fact alone "forecloses" relief); In re Pub. Emps. for Env't Resp., 957 F.3d 267, 275 (D.C. Cir. 2020) (explaining that Circuit "will not" grant relief in such case).

Reshuffling the queue would not reduce total wait time. It would, moreover, strip the expert agency of its discretion to prioritize certain cases. See Barr Lab'ys, 930 F.2d at 76 ("The agency is in a unique — and authoritative — position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."). As in Dib, this Court declines to do so — especially when that would thwart Congress's choice to "give[] the agencies wide discretion in the area of immigration processing." 2026 WL 1578859, at *7 (quoting Skalka, 246 F. Supp. 3d at 153–54). This factor favors Defendants.

4. *Factor (6)*

The last factor notes that courts can still find that agency action was unreasonably delayed even if no "impropriety lurk[s] behind" the delay. TRAC, 750 F.2d at 80 (quoting Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA, 740 F.2d 21, 34 (D.C. Cir. 1984)). Without impropriety,

however, this factor is neutral. Da Costa, 80 F.4th at 345–46. Plaintiff does not allege that Defendants have acted improperly, so this factor favors neither side. See Opp. at 33.

* * *

Taking the factors together, (1) and (2) weigh against relief, as does (4). That set of factors is by far the most important. While factors (3) and (5) tilt toward Plaintiff, they cannot overcome the fact that the length of delay is reasonable as a matter of law and that letting Adan jump the line would simply push others back. The Court is sympathetic to Adan's predicament, but it must deny relief under the APA.

C. Mandamus

On the question of mandamus, the D.C. Circuit has given two sets of instructions on how courts should analyze such petitions. First, the inquiry contains a jurisdictional prong and a merits prong. In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005). And second, whether the plaintiff is entitled to a writ of mandamus for delayed agency action depends once again on the TRAC factors. Am. Hosp. Ass'n, 812 F.3d at 189; In re Bluewater Network, 234 F.3d 1305, 1315 (D.C. Cir. 2000); In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008); In re People's Mojahedin Org. of Iran, 680 F.3d 832, 836–37 (D.C. Cir. 2012).

As this Court did in Dib, it declines to take up the question of how the TRAC factors map onto the general mandamus test because it is irrelevant when the result is as clear as it is in Adan's case. Per Circuit precedent, courts can assume statutory jurisdiction to reject a claim on the merits. E.g., Abdellatif v. U.S. Dep't of Homeland Sec., 109 F.4th 562, 569 (D.C. Cir. 2024). Indeed, when a question of statutory jurisdiction is hard but "relief will unquestionably be denied" on the merits, Young v. EPA, 106 F.4th 56, 61 n.5 (D.C. Cir. 2024) (emphasis omitted), the Circuit often prefers to dispose of the claim on the easy merits grounds and thereby "avoid a

doubtful issue of statutory jurisdiction." Kramer v. Gates, 481 F.3d 788, 791 (D.C. Cir. 2007) (emphasis omitted). That is the case here. For the reasons set out above, Plaintiff cannot surmount the TRAC factors. Whichever formal prong these apply to, therefore, the Court will presume subject-matter jurisdiction under the Mandamus Act and reject Plaintiff's petition on equitable grounds. Cf. Rashidian, 2024 WL 1076810, at *5 & n.5 (taking this approach).

## IV. Conclusion

The Court may review the delay that Adan challenges here, but he does not state a claim that such delay is so unreasonable that it merits judicial intervention. The Court will therefore grant Defendants' Motion to Dismiss. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: August 13, 2026